The case for argument this morning is U.S. v. Goodwill 20-3188. Mr. Breyer, good morning. Good morning, Your Honor. May it please the Court, Tom Breyer on behalf of the appellant William Goodwill. The district court committed reversible error in this case by misapplying a case that this after its en banc hearing in Cole, which is Rodriguez v. United States. Rodriguez holds that absent reasonable suspicion, which the government is not arguing in this case, absent reasonable suspicion, police officers cannot detain a motorist who has been pulled over for a traffic stop longer than reasonably necessary to complete the mission of the stop. Here, two police officers pulled over Mr. Goodwill for a window tint violation and a lane violation and decided before the stop was even initiated that they would be issuing a traffic warning rather than a citation. Mr. Breyer, you are correct in your statement of the law in what Rodriguez holds, but the district court here found that the detective was, I think his words were, was working diligently in writing the warning at the same time that he was asking questions and did not unreasonably prolong the traffic stop with the questions. Given that we reviewed that factual findings for clear error, how do you get around that and how can we, based on this record, find that that determination was clearly erroneous? So I think the critical point that the district court missed was identifying the proper Rodriguez moment. So the Rodriguez moment here is 2.02 p.m., which is when the records check comes back clean from Leeds and the Secretary of State. That's the moment in time when the tasks tied to the investigation, when the investigation related to the initial stop itself, was over. That's what this court held in Rodriguez-Escalera. When the tasks tied to the investigation, which Rodriguez defined as determining whether to issue a traffic ticket, checking the driver's license, determining whether there are any outstanding warrants, and inspecting the automobile's registration and proof of insurance, when that investigation is over, Rodriguez kicks in. And once Rodriguez kicks in, any questions that are unrelated to the mission of the stop are by definition unlawful. Wait, wait. Go ahead. Go ahead. But that's, that's all, that's, that'd be brand new law. I mean, in my, in my view, what you're asking us to say is at 2.02 p.m. he receives, let's just take 2.03. Okay, 2.03 p.m. he says he's only going to receive a written warning. That's it. He's got to totally shut his mouth at that point and just write the ticket. Can't say another word to the individual sitting next to him. No, it's not that he can't say another word. He can ask him questions that are related to the mission of the stop as he's completing the warning. But he can ask him whatever he wants. I mean, I don't, I, I guess I'm not following that. If he's diligently working on the ticket, why can't he say to him, you know, I, I really like those shoes. Where'd you get them? I've been actually thinking about getting a pair of shoes just like that. Where'd you get them? And if the guy says, you know, I just picked them up at Kohl's. What's wrong with that? As long as he's working on the ticket. So there's nothing wrong with it as long as under Rodriguez it occurs before the mission is over. And so, and I think that's the key language in Rodriguez is where the court says on scene investigations. The key word to me is investigations or inquiries into other crimes is impermissible. So once the, once the mission's over, once you have everything you need to issue a simple warning, you send the driver on their way. Isn't the law that the mission is over once you issue the warning as long as you're not unnecessarily delaying that process? Because there's, there's a lot more that goes into it or there are additional steps that have to take place after you tell the person who you've pulled over, I'm going to issue you a warning. So Rodriguez says that the critical question actually isn't when the warning is issued or when the canine search necessarily occurs, whether that's before the warning or after the warning. Instead, the focal point is on the investigation on the mission. And so I think the language in Rodriguez that is directly applicable here is that a traffic stop is still unlawful even though the warning has not yet been complete. If there are questions unrelated to the mission of the stop, that prolong the stop. But that's the point. It's the prolonging of the stop. You're arguing, if I understand it correctly, that at 202 or at 203 that the mission is over that you can't ask any questions because any questions would unreasonably prolong it. And I, I don't see the law as saying that. I see the law as saying that during the process from the time that you're pulled over until the time you issue the warning, you can't ask questions during that full time period that unnecessarily delay it. I disagree, or I agree with you, Your Honor, up until the point where the line is drawn at the issuance of the ticket. In U.S. v. Lopez, this court said that a stop that lasts 15 minutes would be too long if the investigation justifying the stop ended at the 14-minute mark. And so the focus really is on the investigation. It's not on the issuance of the warning. And in Rodriguez, I think the court goes to extra lengths to clarify that the relevant focal point is not on the actual issuance of the warning itself. It's when the officers have all the information they need to issue the warning and send the motorist on their way. Mr. Breyer, what, what are we to do with the consent? Because the consent occurred during the prolongation of the stop, I believe the consent occurred at 2 o'clock p.m. Because the stop had been unlawfully prolonged by that point, the voluntariness of the consent is foreclosed. You're saying it came too late? Came too late, yes. And although this court hasn't addressed that issue directly, there is some case law that suggests even asking the question of consent deviates from the mission under Rodriguez. I wouldn't go so far as to suggest that, but here I think it occurred too late, like you said. Your Honor, I think, um, going back to this focal point on when the, uh, investigation should have ended, um, the 2 o'clock p.m. mark is, is critical because, uh, Rodriguez specifically rejected any de minimis extension of the stop itself. And so when U.S. v. Clark, for example, the Third Circuit held that 20 seconds, even asking about a simple criminal history background was too long. In Rodriguez-Escalera, this court said that, um, any questions after the investigation was over were too long. And the fact that there's no reasonable suspicion here means that this should have been a simple three to four minute traffic stop. But the Clark opinion was that those questions were asked and delayed and unreasonably extended the stop, not that they were, and it wasn't, the warning hadn't been issued yet. So it's the triggered date that, that I think you're off on. So the court in Clark said that, simply stated, we hold that after Bradley's computerized check, same as in our case, confirmed Robert's authority to drive the vehicle and without any other, uh, indication that he lacked that authority, then the traffic stop was effectively completed. And so it is the computerized check. It's the information you need to complete the simple traffic warning. And in this case, nothing went sideways, there were no delays, there was no reason to detain Mr. Goodwill longer than that four minute mark, and at that point, especially because he had used the bathroom, I think under Rodriguez, uh, he should have been sent on his way. Uh, and unless the court has any more questions at this point, I'd like to reserve the rest of my time for Bob. Thank you, Mr. Breyer. Thank you. Mr. Simpson. Good morning, your honors. May it please the court, I'm Scott Simpson on behalf of the United States. As the panel has already observed, the, uh, point under the case law of Rodriguez, uh, among other decisions, of Rodriguez by the Supreme Court and other decisions by this court, is that the length of a traffic stop is tied to the mission of the stop. And obviously, uh, if the, if the officer is going to issue a warning ticket, part of that mission is issuing the warning ticket. And the government's position in this case boils down to this, uh, 11 minutes was a perfectly reasonable amount of time to complete the mission of this traffic stop. The stop began at about 1.59 p.m., uh, Mr. Goodwill consented to the search of his car at about 2.08 p.m., and about two minutes later, Detective Roseman, uh, finished writing the warning ticket. 11 minutes, uh, that's easily a reasonable length of time in this case. Uh, during those 11 minutes- But we've said that the time, there's no magic time that applies, that you have to look at the facts. So it could be five minutes, it could be 15 minutes, it's not, there's no litmus test of time. Correct, Your Honor. Uh, and, and that's why I've said in this case, in this case, we believe 11 minutes was a reasonable amount of time. Uh, during that time, Detective Roseman had to check the driver's license and registration by contacting the relevant authorities. He had to check whether the car had been reported stolen. He had to check the insurance. He had to verify the driver's address. He had to check for outstanding warrants. He had to explain the violations, the traffic violations to the driver. He had to fill out the warning citation. And he had to assess, in this case, the driver's ability to continue driving after he had seen Mr. Goodwill yawning a couple of times. Um, there's no basis for the defendant's argument that the stop was prolonged to question him or, uh, to, to await the, the arrival of the canine. Um, as we've said, the Supreme Court's decision in Rodriguez and this court's decisions, for the length of the stop in relation to the violations that prompted the stop, uh, and related things like officer safety. You can see in the video, um, and I hope that, I hope that the members of the panel have watched that video. It's very revealing. You can see in the video that Detective Roseman is, uh, riding, working on the warning or looking at his computer, receiving information from the various authorities and requesting information and so forth on his computer. While he's chatting with Mr. Goodwill. Mr. Simpson, uh, at what point do we, uh, find that the, uh, Mr., Detective Roseman is interested in the tinting of the windows? I, I believe, uh, Detective Roseman testified that, um, as soon as he got out of his cruiser and approached Mr. Goodwill and Mr. Goodwill got out of his car, uh, I believe Detective Roseman testified that he told Mr. Goodwill at that point, um, that, uh, that he was being stopped for the, the window tinting and for the, the lane, leaving the, the lane. And it was going to, they were going to test the, they were going to test the tinting at a later date, at a later time? Well, Your Honor, uh, the, um, I believe it's this court in Lewis that has said, uh, the, uh, the officer is not the court. Uh, it's the court that determines whether the window tint. Right. The window tinting violates the law. Um, and I don't believe there is any really, any requirement to, uh, uh, to test the window tinting using the window tint meter. Detective Roseman testified that he liked to do that when he stopped someone for that reason, just to show the driver, here's, here's what the meter says, therefore I, this is a good stop. When did, when did that meter, meter reading occur? It was going to occur, Your Honor, and one of the, um, interesting salient points, I guess, this, this encounter, um, had a, a, a very definite, um, breaking point when, uh, if you look at the video, you see that once they discover the two packages, the two tape wrapped packages of cocaine behind the dashboard, they go up to Mr. Goodwill and start to arrest him and he runs away. Um, the window tinting meter was not used as far as we know in this case. Presumably, however, if Mr. Goodwill had not run away, run away at that point, they would have used the window tint meter to show him that that stop was good. Um. Is it your argument that that's part of the mission of the staff? So, would have continued until the testing took place? Uh, Your Honor, the, the, um, since Detective Roseman testified that, uh, that he, that that is his practice to use the window tint meter as part of a window tint, uh, stop, um, the, the district court found that, that, yes, that that is part of, uh, of such a stop. Correct. Um. In fact, the district court found as, as, as I believe it was you, uh, Judge St. Eve indicated earlier that the district court found that Judge Roseman was working diligently. Uh, in fact, we would submit that's even more than required under the case law. Under the case law, uh, the officers only have to be acting reasonably. Detective Roseman, the district court found, was acting diligently. The defense seems to think that an officer has to avoid any and all, uh, conversation, uh, with a driver, um, apparently during the entire stop, but certainly, uh, as, as defense counsel has said, uh, this morning, once, once the investigation is complete, whatever that means, the defense seems to be saying that the, that the officer has to keep silent while checking registration, checking the license, checking for warrants and so forth, but that's, that's just not the law as I believe Judge Kirsch, uh, referred to earlier. Uh, one, one final point, Your Honor, about, about this argument that the consent, that Mr. Goodwill did not consent to the, to the search of his car. Um, that, that argument that the consent was involuntary is based entirely on the argument that the stop was unreasonably prolonged. And as we've discussed, that, that's not correct. Uh, and Mr. Goodwill's, uh, consent, expressed consent was very clear on its face. Uh, the district court found that he told Detective Roseman four times that the officers could search his car. And really, uh, as we point out in our brief, that consent wasn't really necessary here because, uh, the, the, the, the drug sniff by the dog, uh, began before the stop was, before Detective Roseman even finished, uh, preparing the written warning. Uh, so it wasn't really necessary for, uh, for Mr. Goodwill to consent to the search, uh, during the stop. Uh, so in short, from, from the beginning of this stop until the moment Mr. Goodwill started running away from the arrest, uh, we submit that the officer's actions were perfectly appropriate. Uh, so we urge the court to affirm the denial of the motion to suppress. Thank you, Mr. Simpson. Thank you. Mr. Breyer, rebuttal, please. So, uh, a few points, Your Honors. The first, with regards to the video, I disagree with Mr. Simpson. If you watch the video closely, and I think this is most noticeable around the 2.05 mark when Detective Roseman, who's at the passenger door, is asking, uh, Mr. Goodwill about the gift he bought for his child, about what is in his trunk, several things unrelated to the mission of the stop. Detective Roseman's hand isn't moving for a good 30 or 40 seconds. He's not doing anything, in fact. He's spitting tobacco into a can. He's looking around. He's not working on the ticket, and he's not working at, working on it with any degree of diligence, as reflected by the fact that when he did complete it, he marked the wrong offense. That's not diligence. And I think the video really does speak for itself. If you watch him closely, he's not working on the ticket. He's not writing anything. He's just sitting there, and, uh, and I think that speaks for itself. Um, I agree with Mr. Simpson that the questions are not limited, um, while the mission of the stop is ongoing. So, the recent case that, uh, the government brought to this court's attention was Golston, uh, which this court decided in June. And there, there were about 14 minutes of actions that were unrelated to the mission of the stop, going back to check for insurance, calling the K-9 unit, uh, checking for a notice violation that the, uh, motorist had. All of those things were perfectly lawful. Um, the same thing in Lewis, asking questions before the mission was over. Okay. But in cases like this, and this case is unique, where it was a very short amount of time before the mission was complete, the focal point really is that computer check. And once the record check comes back clean and absent any more reasonable suspicion, then that's the point in time under Rodriguez where any questions that are unrelated to that stop must cease. Uh, and so, I would respectfully request that the district court vacate, uh, and, uh, remand this case for further proceedings. Thank you. Thank you, Mr. Breyer. And you were also appointed in this case. Thank you for taking the appointment. Thank you. We appreciate that.